## WILLIAM FOSTER *et al. versus* The City of BOSTON.

In March, 1833, a memorial was presented to the mayor and aldermen of Boston by several proprietors of lands, including the complainants, representing that the public convenience required that a street should be laid out over their lands, and that to promote this improvement they would for themselves individually relinquish their interest in the land for the street, provided the street should be opened during the year 1833, agreeably to a particular plan.  In April, the mayor and aldermen passed a vote, that a certain sum of money be appropriated to defray the expenses of laying out a street according to the plan, to be paid when the street should be made and fitted for paving, to such person or persons as the memorialists should designate, and to be in full for all the expenses, as well as for all damages, to be incurred on the part of the city in laying out and making the street.  In June the complainants addressed a letter to the other memorialists and sent a copy to the mayor, explaining their proposition to be, an offer to relinquish all claim of damages for their land, but not their claim of incidental damages for removing and repairing their buildings.  In October, the mayor and aldermen passed an order laying out the street according to the plan, and the street was finished during the year.  Soon after the passing of this order the complainants protested against the street being made without a previous agreement in relation to an indemnity, and gave notice that they would hold the city responsible for all damages.  It was *held*, that the proposition of the memorialists was a continuing offer during the year, if not revoked or rejected ; that the vote of April was not a rejection, but a distinct proposition on the part of the city; that the offer of the memorialists was several in its nature, and until accepted or rejected by the city, each proprietor of land had a right to revoke or modify his offer, independently of the others; and that by laying out the street, the city, in legal effect, accepted the complainants' offer as modified by their letter of explanation, and it then became a contract, binding upon both parties; and thereby the city became entitled to the land, and the complainants became entitled to incidental damages for removing and repairing their buildings.

THIS was a complaint instituted to recover damages against the respondents for taking 11,000 feet of the plaintiffs' land and taking down the buildings standing thereon, to make a street from Broad street to Sea street, in Boston.

On the trial in the Common Pleas, before *Ward* C. J., it appeared that on the 5th of March, 1833, the plaintiffs and twenty other persons who were severally owners of different parts of the land over which the street was laid out, presented a memorial to the mayor and aldermen of Boston, in which they state that the public safety and convenience require that a street should be opened from Broad street to Sea street. and that for the purpose of aiding in this improvement, they " agree, for themselves individually, to relinquish to the city their inter-

est in said lands for said street, to the width of forty or fifty feet as set opposite to their names, provided that said street should be opened during the year 1833, agreeably to the plan of S. P. Fuller, exhibited to the city government last year.' The plaintiffs signed for a fifty feet street.

On the 29th of April, 1833, it was ordered by the board of aldermen, that $25,000 be appropriated to defray the expenses of laying out and making the street, agreeably to the plan, and that that sum should be paid, when the street should be completely made and fitted for paving, to such person or persons as should be designated by the petitioners for the street, and that it should be in full for all the expenses, as well as for all damages, which should be incurred on the part of the city in laying out and making the street.

On the 17th of June, 1833, the plaintiffs made a written communication to their associates, petitioners for the street, and sent a copy to the mayor, in which they explain their intention to be, that the city should have 11,000 feet of their land ready for paving, but not the buildings standing thereon, and that a just proportion of the $25,000 granted by the city, should be applied towards indemnifying the plaintiffs for removing their buildings.

On the 19th of August, the petitioners for the street laid before the board of aldermen a memorial, representing that the grant of $25,000 was insufficient to effect the object, and praying that the city would lay out the street, and pay the excess over the first appropriation of $25,000, provided the same should not exceed $3000.

On the 23d of October, 1833, the mayor and aldermen laid out the street, fifty feet wide, according to the plan before mentioned, and it was made during that year.

On the 28th of October, the plaintiffs addressed a letter to the mayor and aldermen, saying that they have received from them a notification to remove certain buildings to conform to a projected street running through their land, and representing that they have a number of tenants on such street unprovided for, and that it is their desire to retain them and provide for their future accommodation ; and they express a hope that the city government will suggest some acceptable mode of determining

the indemnity that may be due for the removal of their buildings ; they further say, that they ask nothing for their land, but require only enough to make good their rents, which will be cut off to a considerable amount.

On the 6th of November, the plaintiffs addressed another letter to the mayor and aldermen, saying, that having had no reply to their letter of the 28th of October, and being informed that their buildings were to be immediately demolished without an indemnity, they protest against any act of violence on the part of the city on their land, without some previous understanding in relation to a just indemnity for all damages of every description, and they declare that they shall hold the city government responsible for all damages.

The respondents proved that they made the street of the width of fifty feet, according to the plan, before the expiratior of the year 1833, and so they contended that the plaintiffs ought not to recover any damages against them for taking their land.

The plaintiffs contended, that the doings of the mayor and aldermen on the 29th of April, taken together with the memorial of the petitioners of the 19th of August, amounted to a rejection on the part of the mayor and aldermen of the agreement and proposition of the plaintiffs, or a revocation by the petitioners, and that they were thenceforth not bound by their agreement to give the land for the purpose of a street. But it was ruled, that the doings of the mayor and aldermen on the 29th of April, and the memorial of the 19th of August, did not amount to a rejection of the petitioners' offer to give their land, or a qualification or revocation thereof by the petitioners, and that if the mayor and aldermen laid out and made the street in the year 1833, the obligation on the part of the plaintiffs to give their land for the purpose of making it would remain in force, and that the promise of the plaintiffs to relinquish their interest in the land had no other limitation or condition than that the street should be laid out and made in the year 1833.

The plaintiffs further contended, that their communication of June 17th, made to their associates and to the mayor, fully showed that the plaintiffs expected to be indemnified against

the loss which they should sustain by taking down the buildings standing upon the land over which the street should be laid out, or was a qualification, alteration or revocation of their previous offer.

They further contended, that by their communication to the mayor and aldermen, dated October 28th, in reply to the order to the plaintiffs to remove their buildings, and by their protest against any act of violence upon their buildings until indemnity should be provided for the damages which they should sustain by pulling them down, it was apparent to the mayor and aldermen, that the plaintiffs did not intend to relinquish to the city their interest in the buildings, and that they had a right to claim damages of the city for taking them down. And they further contended, that the effect and meaning of the memorial of the 5th of March, did not oblige them to relinquish their interest in the buildings, but would be satisfied by relinquishing their interest in the land.

The jury were instructed, that the laying out and making the street was desired by all those who signed the memorial and agreement of the 5th of March, and that the agreement of each signer individually to give his land was in effect an agreement between each signer and the others, as well as between each signer and the city, and that no one of them could revoke his agreement without the consent of the others ; and that the mayor and aldermen, having laid out and made the street within the time limited by the plaintiffs, had a right to insist on the plaintiffs' performing their promise according to the true intent and meaning of it ; that the intention of the plaintiffs was, to give the public an easement only in their land, and though this might make it necessary to take down the buildings, it could not give the city a right to the materials of which the buildings were composed.

The respondents admitted that they took the materials of the buildings and converted them to their own use ; and it was agreed that the jury should assess such damages therefor as the materials were worth.

The jury returned a verdict for the plaintiffs for $400 damages on account of the materials, but did not award any damages for taking the land.

The plaintiffs filed exceptions to the rulings of the judge.

*Bartlett*, for the plaintiffs. On the 23d of October, when the street was laid out, the city was not in a condition to accept the plaintiffs' offer, 1. because they were bound to accept within a reasonable time, and more than a reasonable time had then elapsed ; and 2. because their proposition of the 29th of April, amounted to a refusal of the offer. *Frith* v. *Lawrence*, 1 Paige, 435. The order laying out the street makes no reference to any proposal on the part of the plaintiffs, and the presumption is that the city officers laid it out in the general performance of their public duties.

The plaintiffs had a right to revoke their offer at any time before it was accepted, which they did by their communication of the 17th of June. *Routledge* v. *Grant*, 4 Bingh. 653 ; *Cooke* v. *Oxley*, 3 T. R. 653 ; *M'Culloch* v. *Eagle Ins. Co.* 1 Pick. 278 ; *Williams College* v. *Danforth*, 12 Pick. 541. The suggestion that the memorial of the 5th of March was a mutual contract binding on all the subscribers, is untenable. *Limerick Academy* v. *Davis*, 11 Mass. R. 113.

*J. Pickering*, City Solicitor, contended that the respondents had the right to accept the plaintiffs' proposition and make the street, at any time before the expiration of the year 1833 ; that the proposition had been accepted and the street made accordingly ; that the plaintiffs made an offer of their land, saying nothing about the buildings, and they were bound to remove the buildings ; and that the order appropriating $ 25,000, so far from being a rejection of the offer, was made for the very purpose of carrying it into effect ; *Jones* v. *Andover*, 9 Pick. 146.

SHAW C. J. delivered the opinion of the Court. It appears that in March, 1833, a memorial or petition was presented to the city government, by various proprietors of land, including these complainants, setting forth that a marginal street, passing over their lands, would be of great public convenience, and to promote this improvement, which it was obvious, would be beneficial to them, they offered to give in, without claim for damage, so much of their land, respectively, as might be necessary for such street. This offer was upon condition that the street should be laid out during the year

*Foster v. Boston.*

*March 12th*

*April 1st.*

1833. · The city thereupon, without expressly declining or ac· cepting this offer, passed a vote offering to pay $ 25,000 for the accomplishment of this improvement.

It is contended, on the part of the complainants, that by this vote, the city impliedly declined their offer, and that they were no longer bound by it. But the Court are of opinion, that it cannot be so considered. It was a distinct proposition on the part of the city, and if not accepted, it did not preclude them from acting upon the offer before made by the petition- ers, if it were not withdrawn.

In regard to this offer of the city, a committee of the peti- tioners took it into consideration, and ultimately it was agreed to accept it, if the city would add $ 3000. This proceeding however is not material to the present inquiry.

The Court are also of opinion, that until the city govern- ment had accepted or rejected the offer of the complainants and the other proprietors, they had a right to revoke or to modify it. In the exercise of this right, the complainants, in June, 1833, addressed a letter to the proprietors, and sent a copy of the same to the mayor, explaining the proposition on their part to be, an offer to relinquish all claim of damages for land taken, but not other and incidental damages, for removing and repairing buildings. This was in effect a renewal and confirmation, on the part of the complainants, of the offer be fore made, with the modification and explanation thus stated. It was a continuing offer, for the time therein limited, that is, during the year. The city government, within that time, the offer not having been revoked, did lay out the street in due form of law, thus acted upon and in legal effect acceded to, and accepted the offer, and then it became a contract, binding upon both parties.

It was contended, that although in ordinary cases a party· making an offer, may withdraw or modify it, before it is ac- cepted and acted upon, yet it could not be done in the pres- ent case by the complainants, without joining with all the other subscribers. But we think this is not correct. The several proprietors, although they joined in one petition and represen- tation, in effect severally offered to relinquish their respective lands. The offers were in their nature several.

The question then recurs, what was the effect of the complainants' offer, and how far did it bind them as to relinquishment of damages, considering the offer as expressed in the subscription paper, and explained by the subsequent letter. It may be proper to say in passing, that any declarations, or protests, made by the complainants, after the city government had accepted their offer by laying out the street, could be of no avail. They could then neither revoke nor modify their proposal.

The offer of the complainants must be taken according to the subject matter. In most cases, an offer of land for any purpose would be an offer to transfer the land in fee. But where it is for a highway, it must be an offer to allow the pub lic such right as they would acquire by taking it for a highway, that is, an easement for the public, to continue during their pleasure. To fit it for this use, all buildings must necessarily be removed from it ; the offer therefore necessarily includes the consent of the owner, that all buildings shall be removed from t, and in relinquishing the land, he relinquishes all benefit to be derived from having buildings stand upon it. As sucn a public and perpetual easement deprives the owner of nearly all beneficial use of the land, the damage for taking the land is to all practical purposes the value of the land.

But in taking land for a street, especially in a populous city, the proprietor usually sustains damages beyond the value of the land taken. In the present case, the street was to be laid out according to a plan previously drawn, and it was probably foreseen, that the lines would pass through some buildings. The expenses which a proprietor incurs, in addition to the value of tne land taken, usually are those necessary to fit his remaining lands for beneficial use and occupation. This will commonly depend much upon the circumstances of each case. If the buildings can be removed, and the proprietor owns the land adjoining, so that they can be set back, then the expense of removing the buildings would be the damage. In many cases it may be necessary to build new walls on the new line of the street, to replace chimneys and other fixtures. Whatever it may be, the expense of adapting the buildings of the proprietor to the new line of street, being something beyond the

value of the land taken for street, and incurred not upon oɪ in respect to the land taken but to other and adjacent land, we think cannot be included in an offer to give up the value of the land. The offer we think was, to relinquish the land, and all direct benefit of it, that is, the value of the buildings standing upon it, beyond the value of the materials, or the value of them to remove, but not the incidental expenses of ɪeplacing walls, and fitting the remaining lands for beneficial occupation, according to the circumstances. The true rule therefore would be to take the common mode. of estimating damages, taking in separate items ɪne value of the land, and incidental damages to other land, whatever this may be, then strike out the item for land, and leave the residue as the measure of the complainants' damages.

*Exceptions allowed, verdict set aside, and a new trial grant-ed, to be had at the bar of this Court.*